UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JAMES MICHAEL LEASING CO., LLC,**
           Plaintiff,

    v.                                                  Case No. 11-C-0747

**PACCAR INC., d/b/a Kenworth
Truck Company,**
           Defendant.

---

## DECISION AND ORDER

In this diversity case, James Michael Leasing Company, LLC ("James Michael Leasing") alleges that PACCAR, Inc., d/b/a Kenworth Truck Company ("PACCAR") violated Wisconsin's lemon law, Wis. Stat. § 218.0171. In August 2007, James Michael Leasing purchased a Kenworth semitruck manufactured by PACCAR from PACCAR's dealer in Milwaukee. The parties agree that the truck was a "lemon" and that the lemon law entitled James Michael Leasing to return the truck for a refund. The dispute in this case is over whether PACCAR complied with the lemon law in making the refund. The parties have filed cross-motions for summary judgment, which I consider below.

### I. BACKGROUND

James Michael Leasing took delivery of the Kenworth truck from Wisconsin Kenworth, one of PACCAR's dealers, on August 29, 2007. On June 7, 2011, James Michael Leasing served PACCAR with notice that it wanted to return the truck for a refund in accordance with Wisconsin's lemon law. PACCAR agreed that the truck was a lemon and put Shawn Miller in charge of issuing a refund. On June 28, 2011, Miller advised Janie

Kincaid, who handled the dispute on behalf of James Michael Leasing, that PACCAR would issue a refund, and that it had calculated the refund as follows:

    (a)    Purchase Price, including FET[1]:    $135,847.00

    (b)    Collateral Costs:    $11,764.87

    (c)    Interest:    <u>$31,777.03</u>

              TOTAL:    $179,388.90

Lien payoff through 6/30/11:    $61,647.05

Remainder to James Michael Leasing:    $117,741.85

The next day, Miller sent another email in which he stated that PACCAR would send two checks made out to James Michael Leasing to PACCAR's Milwaukee dealership—one for the refund to James Michael Leasing, and one for the lien payoff. Miller stated that James Michael Leasing would be responsible for seeing that the lien was paid off, and that once it was James Michael Leasing should transfer title to the truck to PACCAR and return the truck to the Milwaukee dealership. Kincaid responded to Miller's email and stated that she thought that the refund amount should be increased by $53, which represented the title fee that James Michael Leasing had paid when it purchased the truck. She also stated that James Michael Leasing did not want to be responsible for paying off the lien.

    Miller responded to Kincaid's email and agreed that the $53 title fee needed to be added to the refund. However, he reiterated that James Michael Leasing would be responsible for paying off the lien. In addition, Miller noted that the Wisconsin lemon law allows a manufacturer to deduct a reasonable allowance for use from the refund amount,

---

[1] Federal Excise Tax

and that PACCAR would thus reduce the refund by $3,751.24. Miller arrived at this number after reviewing the part of the Wisconsin lemon law stating that a reasonable allowance for use "may not exceed" the amount obtained by multiplying the "full purchase price of the motor vehicle" by a fraction, the denominator of which is 100,000, and the numerator of which is the number of miles the vehicle was driven before the consumer first reported a problem to the dealer. See Wis. Stat. § 218.0171(2)(b)2.b. Using this formula, Miller decided that the full purchase price was $121,952 (which was the purchase price as listed on the invoice, $135,847, less the federal excise tax of $13,895), and that the number of miles driven before James Michael Leasing reported a problem was 3,076. Thus, Miller's calculation looked like this: $121,952 x (3076mi/100,000mi) = $3,751.24.

After Miller applied the title and reasonable-use adjustments, the refund amount became $114,043.61. Miller advised Kincaid that a check in that amount, along with a check in the amount of $61,868.30 for the lien payoff, could be delivered to James Michael Leasing on July 1, 2011. In response to this email, Kincaid stated that she would return the truck to the dealer on Tuesday, July 5, 2011, that the check should be delivered to her, but that she did not want to be responsible for paying off the lien.

On July 1, 2011, Mike Oswald, an employee of PACCAR's Milwaukee dealership, traveled to James Michael Leasing's offices to personally deliver the two checks. When he arrived, he presented Kincaid and Michael Smiley, the owner of James Michael Leasing, with the checks. Kincaid took the checks and made copies of them. At that point, Kincaid and Smiley informed Oswald that they would not accept the checks. According to Oswald, Kincaid and Smiley refused to accept the checks because they did not want to be responsible for paying off the lien. Oswald reported these events to Miller, and Miller

instructed Oswald to re-offer a check in the amount of $114,043.61 to James Michael Leasing along with an assurance that PACCAR would pay off the lien directly. Oswald returned to James Michael Leasing's offices later in the day on July 1 to do so. However, Kincaid again rejected the check, this time on the ground that the amount of the refund was incorrect. Kincaid did not explain to Oswald why she thought the refund amount was incorrect. Oswald again reported what had transpired to Miller, and Miller wrote an email to Kincaid in which he summarized the day's events and asked her to explain why the refund amount was incorrect.

On July 5, 2011, Kincaid responded to Miller's email and explained that the refund was incorrect because the deduction for reasonable use was excessive. Kincaid stated that she thought the deduction should be $364.26, which she calculated by multiplying the number of miles the truck had been driven before a problem was reported, which according to her was 3,061, by 11.9 cents per mile. Kincaid also stated that because no agreement had been reached as to the amount of the refund, James Michael Leasing would not be returning the truck to the dealer that day. Miller responded to Kincaid's email by explaining that he had calculated the deduction for reasonable use in accordance with the formula that appears in the Wisconsin lemon law and asked Kincaid to reconsider. Kincaid responded by explaining that she thought that the formula produced a deduction that was too high. She stated that the denominator in the formula should be 1 million miles, rather than 100,000 miles, which resulted in a reasonable-use deduction of $369.12.

On July 6, 2012, Miller wrote an email to Kincaid in which he stated that he had been informed that James Michael Leasing had returned the truck to the Milwaukee dealership. Miller stated that he understood this action to constitute an acceptance of

4

PACCAR's offer to issue a refund in the amount of $114,043.61. In response, Kincaid sent Miller the following email on July 7, 2011:

> In good faith, we parked the truck at the dealer on Tuesday, July 5th, because I said we would go to the dealer on Tuesday with the truck. We expected you to pay us what we had coming.
>
> The amount of $114,043.61 offered by [PACCAR] is not acceptable or agreeable. The mileage charge is too high. I made that clear in our last email as well as previous emails, including my email of July 5th.
>
> Please send James Michael Leasing a check immediately in the sum of $117,425.73. This sum allows for the mileage charge of $369.12 per my last email. You may deliver the check to our business [or mail it].

Megna Aff. Ex. I, at p. 2-O, ECF No. 19-9. Miller responded to this email later the same day. He stated that PACCAR would stand firm on its calculation of the refund. He also stated the following:

> Since James Michael Leasing will not agree to accept a check in the amount of $114,043.61 along with [PACCAR's] direct payoff of the remaining PACCAR Financial lien balance in the amount of $61,868.30 to resolve this WI LL complaint, then James Michael Leasing needs to pick up the truck from the Oak Creek Wisconsin Kenworth dealership as soon as possible. Any delay in picking up the truck may result in the dealer charging James Michael Leasing storage fees.

Id. at p. 2-P. After receiving this email, James Michael Leasing retrieved the truck from the dealership. The truck is still in its possession.

On July 15, 2011, James Michael Leasing commenced the present lawsuit by filing a complaint in state court. PACCAR removed the case to this court on August 8, 2011. James Michael Leasing and PACCAR have filed motions for summary judgment.

## II. DISCUSSION

Under the Wisconsin lemon law, a consumer[2] who has purchased a vehicle that turns out to be a lemon has the right to return the vehicle and receive either a refund or a comparable new vehicle from the manufacturer. See Wis. Stat. § 218.0171(2)(b)2. A consumer who wants to exercise that right must offer to transfer title of the lemon vehicle to the manufacturer. Id. § 218.0171(2)(c). Upon receipt of such an offer, the manufacturer must, within thirty days, see id., do the following (assuming that the consumer elects to receive a refund rather than a comparable new vehicle):

> Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use. Under this [provision], a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, the denominator of which is 100,000 or, for a motorcycle, 20,000, and the numerator of which is the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer.

Wis. Stat. § 218.0171(2)(b)2.b. Once the manufacturer provides the consumer with the refund, the consumer must return the lemon vehicle to the manufacturer and transfer title to the manufacturer. Id. § 218.0171(2)(c). If the manufacturer fails to comply with these procedures, the consumer is entitled to recover "twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees." Id. § 218.0171(7).

In the present case, James Michael Leasing contends that PACCAR violated the lemon law in two ways: (1) failing to accept return of the motor vehicle and issue a refund

---

[2]The parties agree that James Michael Leasing is a "consumer" within the meaning of the lemon law.

6

within the thirty-day period, and (2) deducting more than a "reasonable allowance for use" from the amount of the refund it proposed to pay (but did not actually pay) within the thirty-day period.

### A. Failure to Comply with Thirty-Day Time Limit

In <u>Hughes v. Chrysler Motor Corp.</u>, the Wisconsin Supreme Court observed that "[t]he Wisconsin lemon law is violated when the manufacturer fails to voluntarily replace or repurchase the lemon vehicle within 30 days after receipt of the consumer's [lemon-law] demand." 197 Wis. 2d 973, 982 (1996). The court further observed that such a violation triggers the remedies under § 218.0171(7), including liability for "twice the amount of any pecuniary loss." <u>Id.</u> The issue in <u>Hughes</u> was whether the consumer's "pecuniary loss" included the full purchase price of the vehicle, and the Wisconsin Supreme Court held that it did. <u>Id.</u> at 983–84. Thus, under <u>Hughes</u>, a manufacturer who fails to accept return of a lemon vehicle and issue either a refund or a replacement vehicle within thirty days is liable for twice the amount of the full purchase price of the vehicle, among other penalties.

In <u>Church v. Chrysler Corp.</u>, the Wisconsin Court of Appeals held that a dispute between the manufacturer and consumer over the amount of the refund does not excuse the manufacturer's failure to comply with the thirty-day requirement. 221 Wis. 2d 460, 468–69 (Ct. App. 1998). The court noted that although a consumer's attempt to negotiate a higher refund may complicate the process of issuing a refund, "the language of [the lemon law] clearly requires that the manufacturer issue a refund within thirty days of the consumer's offer to transfer title." <u>Id.</u> The court held that "once the consumer makes an offer to transfer title, the burden is on the manufacturer to comply with the thirty-day

7

requirement regardless of whether items or amounts are in dispute." Id. at 469. The court then outlined the manufacturer's options when there is a dispute over the amount of the refund:

> When the parties cannot agree on the correct amount of the refund, we interpret the Lemon Law to give the manufacturer two options: (1) pay the amount demanded by the purchaser within the thirty-day period; or (2) pay the amount which the manufacturer deems appropriate within the thirty-day period. If the manufacturer pays the amount demanded by the consumer, the matter is obviously concluded. If the manufacturer pays the amount it deems appropriate, the consumer may take the matter to court. There the issue will not be whether payment has been made within thirty days, but rather whether the amount of the refund was correct. If the fact finder determines that the refund amount was correct, the manufacturer wins and suffers no penalties under the Lemon Law. If the fact finder determines that the refund amount was insufficient, the manufacturer loses and suffers the penalties imposed by the statute.

Id. The court added that the manufacturer also has a third option, which is to pay nothing. However, it noted that paying nothing "obviously would constitute a violation of the 'Lemon Law' if a refund is owed." Id. at 469 n.3.

In the present case, PACCAR initially attempted to comply with the lemon law within the thirty-day period, but because a dispute arose between it and James Michael Leasing over the amount of the refund, it did not actually accept return of the vehicle and issue a refund within the thirty-day period. As explained in more detail above, James Michael Leasing served its lemon-law notice on PACCAR on June 7, 2011. Within thirty days from that date, PACCAR sent a representative to James Michael Leasing's offices with two checks—one for James Michael Leasing's share of the refund, and one for the lien payoff. However, James Michael Leasing rightfully rejected those checks on the ground that PACCAR was required to send the check for the lien payoff directly to the lienholder, rather than require James Michael Leasing to forward the check to the lienholder. See Marquez

8

v. Mercedes-Benz USA, LLC ("Marquez I"), 312 Wis. 2d 210, 216 (Ct. App. 2008) (holding that lemon law required manufacturer to transfer lien payoff directly to secured lender and that manufacturer could not satisfy this requirement by giving lump sum to consumer and requiring consumer to sort it out with the lender). PACCAR then tried again by delivering a check for James Michael Leasing's share of the refund to James Michael Leasing's offices and informing James Michael Leasing that PACCAR would pay off the lien directly. However, James Michael Leasing again rejected the refund check, this time on the ground that PACCAR had taken an excessive deduction for use. The parties then exchanged various emails about the amount of the deduction for use, but ultimately PACCAR did not accept return of the vehicle and issue a refund in any amount to James Michael Leasing or the lienholder within the thirty-day period. Instead, when James Michael Leasing returned the vehicle to the dealer, PACCAR informed James Michael Leasing that unless it would agree to accept a refund in the amount PACCAR was offering, James Michael Leasing had to pick up the truck or risk incurring storage fees.

As explained in Church, what PACCAR should have done once James Michael Leasing disputed the amount of the refund was accept return of the truck, pay off the lien, and issue James Michael Leasing a check in an amount that PACCAR deemed appropriate. 221 Wis. 2d at 469. At that point, James Michael Leasing could have brought suit to recover the rest of the refund. If during the course of such a suit PACCAR established that the refund it paid was correct, PACCAR would not have incurred any penalties under the lemon law. However, because PACCAR eschewed the approach outlined in Church and ultimately chose to pay nothing and reject James Michael Leasing's attempt to return the vehicle, it violated the lemon law and is now liable for the remedies

9

specified in Wis. Stat. § 218.0171(7)—including twice the full purchase price of the vehicle—regardless of whether the refund as initially calculated by PACCAR was correct.

PACCAR argues that it complied with the thirty-day requirement by tendering a check to James Michael Leasing in the amount PACCAR deemed appropriate and informing James Michael Leasing that it would pay off the lien directly. However, the lemon law does not state that a manufacturer satisfies its refund obligations by tendering a check to the consumer for the consumer's part of the refund along with an assurance that it will pay off the lien directly. Rather, the lemon law states that the manufacturer must tender a check to the consumer and <u>actually</u> pay off the lien. <u>See</u> Wis. Stat. § 218.0171(2)(b)2.b.; <u>Marquez I</u>, 312 Wis. 2d at 216. In any event, although PACCAR initially told James Michael Leasing that it would pay off the lien directly, when James Michael Leasing actually returned the vehicle, PACCAR did not do so. Instead, PACCAR told James Michael Leasing that unless it would agree to accept a check in the amount that PACCAR was offering along with a direct payoff of the lien "to resolve this WI LL complaint," then James Michael Leasing had to retrieve the vehicle from the dealer or risk incurring storage fees. Under the lemon law, PACCAR could not insist that James Michael Leasing enter into such an agreement as a condition of receiving a refund or having the lien paid off within thirty days, see <u>Herzberg v. Ford Motor Co.</u>, 242 Wis. 2d 316, 324–25 (Ct. App. 2001); <u>Chariton v. Saturn Corp.</u>, 238 Wis. 2d 27, 31–32 (Ct. App. 2000), and so by giving James Michael Leasing an ultimatum rather than accepting return of the vehicle and issuing payments to both James Michael Leasing and the lienholder, PACCAR failed to comply with the lemon law's thirty-day time limit and is now liable for twice the amount of the purchase price of the vehicle.

10

PACCAR also argues that unless James Michael leasing "accepted" PACCAR's refund, PACCAR had no obligation to satisfy the lien. However, the lemon law imposes no obligation on consumers to formally "accept" a manufacturer's refund. The only thing the consumer must do to trigger the manufacturer's obligation to issue a refund and pay off the lien within thirty days is offer to transfer title of the vehicle to the manufacturer. See Herzberg, 242 Wis. 2d at 324–25. Here, there is no dispute that James Michael Leasing made such an offer to PACCAR on June 7, 2011. Of course, once the manufacturer issues the refund to the consumer and pays off the lien, the consumer is obligated to return the vehicle and transfer title to the manufacturer. Id. However, in this case, PACCAR never satisfied its obligation to issue a refund to James Michael Leasing and directly pay off the lien, and so James Michael Leasing's obligation to return the vehicle and transfer title never arose. Regardless, James Michael Leasing did return the vehicle, and PACCAR still did not send out a refund and pay off the lien. Instead, it insisted that James Michael Leasing either "accept" the refund (which James Michael Leasing was not required to do) or come and retrieve the vehicle. Thus, PACCAR did not satisfy its obligation to issue a refund and pay off the lien within thirty days.[3]

---

[3] PACCAR points out that James Michael Leasing never transferred the vehicle's title to PACCAR, but that is irrelevant, since PACCAR never did what it needed to do to trigger James Michael Leasing's obligation to transfer title. To the extent that PACCAR means to suggest that James Michael Leasing would have refused to transfer title to PACCAR after PACCAR issued the refund it deemed appropriate and paid off the lien, there is no evidence of that. In any case, even if PACCAR thought that James Michael Leasing would not have transferred title after PACCAR issued a refund and paid off the lien, PACCAR would not have been entitled to refuse to comply with its refund obligations. If PACCAR thought that James Michael Leasing was not going to follow through on its offer to transfer title, it should have issued the refund, paid off the lien, and been prepared to file suit against James Michael Leasing if James Michael Leasing reneged on its offer to transfer title.

11

Although this result may seem harsh—PACCAR is now liable to James Michael Leasing for more than $200,000 even though the parties' initial dispute was over a difference of only about $3,000—the Wisconsin courts have made clear that it is the policy of the state to impose harsh penalties on manufacturers in order to ensure that they voluntarily comply with the thirty-day time limit. As the Wisconsin Supreme Court recently explained:

> The exacting statutory remedies demonstrate that the Wisconsin legislature has expressed a strong preference for the interests of a consumer who purchased a lemon over the interests of the manufacturer who produced the lemon. The Wisconsin legislature intended to provide a compelling incentive for manufacturers to cooperate with the demands of the purchasers.
>
> When a consumer establishes that he or she is stuck with a lemon and provides notice and an offer of title to the manufacturer, the legislature intends the consumer to receive a refund or replacement promptly, without resorting to litigation. The Wisconsin Lemon Law squarely places the burden on the manufacturer to provide a refund within the 30-day statutory period. By imposing this burden on the manufacturer, by imposing a strict 30-day time limit, and by providing exacting statutory remedies for a violation, the legislature intended to encourage cooperation from manufacturers and to make the prospect of litigation unattractive to manufacturers.

Marquez v. Mercedes-Benz USA, LLC ("Marquez II"), 341 Wis. 2d 119, 135–36 (2012). See also Tammi v. Porsche Cars N. Am., Inc., 320 Wis. 2d 45, 67 (2009) (observing that the lemon law creates "potent consequences," and that the manufacturer "must weigh very carefully when 'to hold 'em and when to fold 'em.'"); Chariton, 238 Wis. 2d at 32 (stating that "[t]here are no excuses" for a manufacturer's failure to comply with lemon law's thirty-day time limit); Church, 221 Wis. 2d at 469–70 (noting the "rigidity of the thirty-day requirement" and observing that if the lemon law's requirements "prove to be too rigid and

its results unreasonably harsh, it is a problem for the legislature, not [the courts], to resolve").[4]

In the present case, James Michael Leasing did all it needed to do to trigger PACCAR's obligation to comply with the refund procedures in the lemon law within thirty days. PACCAR did not comply with those procedures within thirty days. Therefore, PACCAR is now subject to the exacting statutory penalties, including liability for twice the full purchase price of the vehicle.

**B.      Calculation of Reasonable Allowance for Use**

Because I have determined that PACCAR violated the lemon law by failing to comply with the thirty-day time limit, I need not determine whether PACCAR committed a separate violation of the lemon law by deducting more than a reasonable allowance for use from the amount of the proposed refund. However, because I must subtract a reasonable allowance for use from the amount of James Michael Leasing's pecuniary loss before doubling it, see Tammi, 320 Wis. 2d at 73–75, I must still consider whether PACCAR's proposed reduction for use was reasonable.

PACCAR contends that its proposed deduction for use was necessarily reasonable because it proposed to deduct the amount produced by the formula contained in Wis. Stat.

---

[4] I note that in Marquez II, the Wisconsin Supreme Court held that "a manufacturer may avoid Lemon Law penalties for failing to provide a refund within the 30-day statutory period if it proves that the consumer intentionally prevented the manufacturer from providing a refund within the 30-day statutory period." 341 Wis. 2d at 137. However, PACCAR has not argued that anything James Michael Leasing did prevented PACCAR from complying with the lemon law within thirty days. Moreover, there is nothing that James Michael Leasing could have done to prevent PACCAR from complying with the lemon law within thirty days, since nothing could have stopped PACCAR from mailing a check to James Michael Leasing and a separate payment to the lienholder within the thirty-day period had PACCAR wanted to do so.

13

§ 218.0171(2)(b)2.b. James Michael Leasing contends that the amount produced by the formula is not necessarily reasonable; instead, that amount is only a ceiling on the amount of the deduction, and the deduction must still meet an independent standard of reasonableness. James Michael Leasing argues that, in this case, the formula produced a deduction that was unreasonable because the formula assumes that the useful life of the vehicle being returned is 100,000 miles, yet the useful life of a semitruck is much greater than that. James Michael Leasing points out that it has semitrucks in its fleet with more than 1 million miles on them, that Michael Smiley opined that the useful life of a semitruck is 1 million to 1.5 million miles, that Shawn Miller testified in his deposition that he is aware of semitrucks with up to 750,000 miles on them, and that PACCAR provides warranty coverage for certain components of a semitruck up to 500,000 miles.

The parties have not cited, and I have not found, a case from a Wisconsin appellate court addressing whether an allowance for use calculated in accordance with the statutory formula is necessarily lawful. Thus, I must interpret the statute. When interpreting a state statute, a federal court applies the same principles of statutory construction that a state court would apply. See, e.g., Karlin v. Foust, 188 F.3d 446, 457 (7th Cir. 1999). In Wisconsin, the court begins its interpretation by focusing on the language of the statute. See, e.g., State ex rel. Kalal v. Circuit Court for Dane County, 271 Wis. 2d 633, 663 (2004). If the language is unambiguous, the court applies the statute's plain meaning. Id. at 663. If the language is ambiguous, the court may resort to "extrinsic sources," which are typically items of legislative history. Id. at 666. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. Id. at 664. Although a court may not use extrinsic sources to change the meaning of unambiguous

14

statutes, it may use extrinsic sources to "confirm" or "verify" a plain-meaning interpretation. Id. at 666–67.

In the present case, I conclude that the statute is not ambiguous and that the unambiguous text supports James Michael Leasing's interpretation. The relevant text imposes two distinct requirements on deductions for use: (1) they must be "reasonable," and (2) they "may not exceed" the amount produced by the statutory formula. The first requirement stems from the use of the adjective "reasonable" in front of the phrase "allowance for use," and the second requirement stems from the entire second sentence of § 218.0171(2)(b)2.b. Although it is possible to interpret the second sentence as a definition of "reasonable allowance for use" rather than as a separate limitation on allowances for use, that is not a reasonable reading of the sentence. Had the legislature intended the second sentence to serve as a definition rather than a separate limitation on allowances for use, it would have been more natural to use language like this: "An allowance for use is reasonable if and only if it does not exceed [the amount produced by the formula]." Thus, the plain meaning of the statute is that an allowance for use must be both reasonable and not in excess of the amount produced by the formula.

The legislative history confirms this interpretation.[5] The Wisconsin lemon law was first enacted in 1983. See Tammi, 320 Wis. 2d at 61. At that time, it provided that a manufacturer could deduct a reasonable allowance for use from the consumer's refund, but it did not include the language stating that a reasonable allowance for use may not exceed the amount given by the formula. That language was added by an amendment in

---

[5] Alternatively, if the statute is deemed to be ambiguous, the legislative history resolves the ambiguity in favor of the interpretation I have adopted.

15

1985.  See 1985 Wis. Act 205.  The bill containing that amendment originally stated that "[a] reasonable allowance for use is the amount [produced by the formula]."  See Assembly Amendment 2 to 1985 A.B. 434 (Oct. 11, 1985) (emphasis added), available at ECF No. 19-18.  However, the legislature amended the bill and changed "is" to "may not exceed." Id.  Obviously, had "is" remained in the bill, the meaning of the second sentence of § 218.0171(2)(b)2.b. would be quite different: that sentence would constitute a definition of "reasonable allowance for use" rather than a cap on the amount that may be deducted for use.  Thus, the legislature's explicit choice of "may not exceed" over "is" reveals that the legislature wanted the formula to serve as a separate limitation on allowances for use rather than as a definition of "reasonable allowance for use."

PACCAR argues that the legislature changed "is" to "may not exceed" because it wanted to give manufacturers and consumers the flexibility to agree to a deduction that is less than the deduction produced by the formula.  However, manufacturers and consumers would have had that flexibility even if the "is" remained in the statute, since no consumer would have complained about a manufacturer's having agreed to a deduction that was less than the deduction produced by the formula.  Thus, the more likely explanation of the change is that the legislature wanted to make clear to manufacturers that they were not entitled to deduct the amount produced by the formula in every case.

In support of its argument that the change from "is" to "may not exceed" was to give parties the flexibility to agree to a lesser deduction, PACCAR cites a part of the legislative history consisting of an "Information Memorandum" describing the proposed 1985 amendments to the lemon law.  This memorandum was prepared by a staff attorney in the Wisconsin Legislative Council.  It states in pertinent part:

> Under Wisconsin Act 205, a <u>formula is established</u> for the calculation of a "reasonable allowance for use." Specifically, the formula provides that a reasonable allowance for use may not exceed the amount obtained by multiplying the full purchase price of the motor vehicle by a fraction, with a denominator set at 100,000 (or for a motorcycle, 20,000) and a numerator set at the number of miles the motor vehicle was driven before the consumer first reported the nonconformity to the motor vehicle dealer. For example, a reasonable allowance for use for a $12,000 car driven 10,000 miles before a nonconformity is reported would be $1,200 [10% x $12,000]. The consumer could have the refund reduced by <u>no more than</u> $1,200. The consumer and manufacturer could agree to a reasonable allowance for use of <u>less</u> than $1,200, based on the condition of the vehicle and the facts of the case.

Information Mem. 86-8, Revisions in the State "Lemon Law," at 4 (April 28, 1986) (emphasis in original), <u>available at</u> ECF No. 19-19. The last sentence of this excerpt is the one that PACCAR uses to support its argument that the change from "is" to "may not exceed" was intended to give the parties the flexibility to agree to a lesser deduction. However, although this part of the excerpt mentions the consumer and manufacturer "agree[ing]" to a lesser deduction, it says nothing about the legislature's intent in changing "is" to "may not exceed." As noted, even if the legislature had retained the "is," the consumer and manufacturer would have had the flexibility to agree to a lesser deduction, and so the legislature likely had something else in mind when it changed "is" to "may not exceed." Moreover, it is difficult to imagine a manufacturer agreeing to a deduction that is less than the amount produced by the formula if the manufacturer knows that it has the right to deduct the full amount.[6] Thus, I do not think that this part of the legislative history

---

[6] Perhaps a manufacturer would agree to a lesser amount as a matter of goodwill. However, the entire lemon law is premised on the notion that, absent the statutory remedies, manufacturers would not treat consumers fairly. It is thus unlikely that the legislature wanted to leave it to manufacturers to agree to accept a reduced allowance for use in cases in which a reduced allowance would be appropriate.

17

supports the argument that the manufacturer is entitled to deduct the amount produced by the formula unless the manufacturer and consumer agree to a lesser amount.

PACCAR makes a second argument that depends on the Information Memorandum. The paragraph of the memorandum that appears directly beneath the paragraph quoted above states as follows:

> This provision [i.e., the formula] is intended to restrain manufacturers from insisting on excessive deductions for reasonable allowances for use. Also, by placing the formula in the statutes, it is hoped that the level of refunds will be more predictable.

Information Mem. 86-8, at 4. PACCAR notes that this excerpt states that one of the purposes of enacting the formula was to make the calculation of refunds more predictable. It then argues that its interpretation of the statute is the one that results in the greatest increase in predictability.

It is true that PACCAR's interpretation results in the greatest increase in predictability: if the deduction produced by the statutory formula is lawful in every case, then there will almost never be a dispute over the amount of the deduction; in contrast, if the deduction produced by the formula is only a cap and not a definition of "reasonable," then even if the manufacturer deducts an amount within the cap there could be a dispute over whether the deduction is reasonable. However, it is not the case that treating the formula as a cap rather than a definition results in no increase in predictability. The amount produced by the formula will likely be a reasonable amount in almost every lemon-law case. Only in cases like the present one, in which the vehicle being returned has a useful life well in excess of 100,000 miles, will the formula produce an arguably excessive deduction for use. Thus, interpreting the formula as creating a ceiling on deductions for

18

use rather than a definition of "reasonable" does serve the statutory purpose of making the calculation of refunds more predictable: in most cases, the amount produced by the formula will be reasonable, and only in rare cases will there be litigation over what constitutes a reasonable deduction.

Accordingly, I conclude that a deduction for use is not reasonable simply because it was calculated in accordance with the statutory formula. However, I cannot determine from the summary-judgment record alone what a reasonable deduction for use would be in the present case. What is reasonable depends on the totality of the circumstances, and although the record suggests that PACCAR's proposed deduction for use is not reasonable, the record does not establish the exact amount that is reasonable. Therefore, if the parties cannot stipulate to a reasonable deduction for use, a jury will need to decide this issue.[7]

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the James Michael Leasing's motion for summary judgment is **GRANTED IN PART**. It is established that PACCAR violated the lemon law by failing to accept return of the vehicle and issue a refund within thirty days, and that James Michael Leasing is entitled to the remedies specified in Wis. Stat. § 218.0171(7), including twice the purchase price of the vehicle less a reasonable allowance for use. However, because there are issues of fact concerning the amount of

---

[7]Because I have determined that, in this case, the amount of a reasonable allowance for use must be determined independently of the statutory formula, I do not separately consider James Michael Leasing's argument that PACCAR improperly determined the "full purchase price of the motor vehicle," and thus multiplied the fraction specified in the formula by the wrong amount.

19

the reasonable allowance for use, the precise amount of James Michael Leasing's damage award remains to be determined.

**IT IS FURTHER ORDERED** that PACCAR's motion for summary judgment is **DENIED**.

**FINALLY, IT IS ORDERED** that the court will hold an in-person status conference on **December 4, 2012 at 2:30 p.m.** in Room 321 for the purpose of determining whether further proceedings are needed.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2012.

                                         s/ Lynn Adelman
                                         _____
                                         LYNN ADELMAN
                                         District Judge