# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES MICHAEL LEASING COMPANY, LLC,
a Wisconsin Limited Liability Company,

        Plaintiff,

    vs.                         Case No. 11-CV-00747

PACCAR INC.,
d/b/a Kenworth Truck Company,
a foreign corporation,

        Defendant.

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR JUDGMENT AND ATTORNEY FEES
## PURSUANT TO SEC. 218.0171(7), WIS. STATS.

---

### <u>Summary of Plaintiff's Request</u>

The plaintiff seeks an award of damages and attorney fees pursuant to sec. 218.0171(7), Wis. Stats., based upon the Court's decision finding that the defendant failed to comply with the Wisconsin Lemon Law as well as the parties' stipulation to the amounts at issue regarding the plaintiff's pecuniary loss.

Section 218.0171(7), Wis. Stats., of the Wisconsin Lemon Law provides that: "The court shall award a consumer who prevails in such an action twice the amount of any pecuniary loss, together with costs, disbursements and reasonable attorney fees, and any equitable relief the court determines appropriate." Sec. 218.0171(7), Wis. Stats.

Accordingly, the plaintiff requests that the Court order judgment awarding it twice the amount of its pecuniary loss, statutory costs, litigation costs and attorney fees.

Further, the plaintiff requests that the Court award double its statutory costs and interest pursuant to sec. 807.01, Wis. Stats., as the defendant failed to accept the plaintiff's statutory settlement offer and the plaintiff's judgment will greatly exceed the amount of the settlement offer. The plaintiff also seeks an award of prejudgment interest from the date this action was filed until the date of its statutory offer.

## I.    Twice the Plaintiff's Pecuniary Loss

### A.    Plaintiff's Pecuniary Loss

As this Court noted in its Decision and Order granting partial summary judgment for the plaintiff and subsequent Decision and Order denying the defendant's motion for reconsideration, the pecuniary loss to be awarded to a successful consumer under the Lemon Law includes twice the amount of the full purchase price of the vehicle. A number of Wisconsin Supreme Court and Court of Appeals cases have interpreted the pecuniary loss provision consistently and have conclusively established that pecuniary loss is the full purchase price of the lemon vehicle plus any sales tax, finance charges, amounts paid at the time of sale, and collateral costs, less a reasonable allowance for use (as set forth in sec. 218.0171(2)(b), Wis. Stats.).

In granting the plaintiff summary judgment, the Court noted that the defendant failed to provide a timely refund: "Therefore, PACCAR is now subject to the exacting statutory penalties, including liability for twice the full purchase price of the vehicle." (See p. 13 of Decision and Order dated 11/9/12, Document 41). The Court reiterated that

the plaintiff's pecuniary loss includes twice the amount of the full purchase price of the vehicle in its decision denying the defendant's motion for reconsideration: "Thus, the net result was that PACCAR did not accept return of the vehicle and did not issue any refund within the thirty-day period, and so it is liable for twice the amount of a proper refund." (See p. 2 of Decision and Order dated 2/26/13, Document 47).

Given the Court's rulings and the subsequent stipulation reached between the parties, the amount of the plaintiff's pecuniary loss is clear. The parties stipulated to the following amounts:

|  | | |
|---|---|---|
| Full Purchase Price, excise taxes, extended warranties, and services fee | | $135,847.00 |
| + | Title and loan filing fees | $      53.00 |
| + | Collateral Costs | $ 11,767.87 |
| + | Finance charges paid (plus per diem interest of $5.59 until paid) | $ 38,805.16 |
| (-) | Reasonable use allowance | $   1,875.00 |
| | **PECUNIARY LOSS** | **$ 184,598.03** |

(See Paras. 1-5 of Stipulation dated May 13, 2013 and filed with the Court).

The end result is that the plaintiff's pecuniary loss is $184,598.03. The plaintiff's total damages can then be determined based upon its pecuniary loss.

## B.    Section 218.0171(7), Wis. Stats.

A prevailing consumer is entitled to twice the amount of any pecuniary loss (plus the consumer's attorney fees and litigation costs) under sec. 218.0171(7), Wis. Stats.

3

Based upon the Lemon Law, the plaintiff's pecuniary loss of $184,598.03 must be doubled to arrive at the total damages to be awarded to the plaintiff, $369,196.06.

The Lemon Law includes a double damage provision as an incentive for manufacturers to comply with the Lemon Law and an incentive for consumers to bring an action when necessary. As the Wisconsin Supreme Court noted in <u>Hughes v. Chrysler Motors Corp.</u>, 197 Wis. 2d 973, 542 N.W.2d 148 (1996), double damages help to persuade manufacturers to settle legitimate warranty disputes. Further, manufacturers will have to consider more carefully the costs of litigating the dispute when there is the prospect of double damages, as well as attorney fees and costs. The <u>Hughes</u> Court also noted that the imposition of double damages as punishment for failure to comply with the statute provides an incentive to manufacturers to resolve disputes. <u>Hughes</u>, 197 Wis. 2d at 983-984.

The threat of double damages also increases the bargaining power of individual consumers: "These corporations not only have the wealth and will to exhaust an individual litigant, but also control vast amounts of technical expertise on the very mechanical aspects the consumer is challenging. Without the sweetener of double damages in a sufficient amount and reasonable attorneys' fees, few consumers would bring such actions." <u>Hughes</u>, 197 Wis. 2d at 983-984, quoting Joan Vogel, *Squeezing Consumers: Lemon Laws, Consumer Warranties, and a Proposal for Reform*, 1985 Ariz.St. L.J. 589.

An additional purpose of the damage provisions of the Lemon Law recognized by the <u>Hughes</u> Court was to improve upon the remedies available before enactment of the

4

Lemon Law.  "Certainly the law is intended to do more than simply parrot the remedies previously available to the consumer." Hughes, 197 Wis. 2d at 983.

In Dieter v. Chrysler Corp., 234 Wis. 2d 670, 610 N.W.2d 832 (2000), the Supreme Court again acknowledged that the Lemon Law was enacted to provide consumers with remedies beyond the "inadequate, uncertain and expensive remedies of the Uniform Commercial Code or the Magnuson-Moss Warranty Act." Dieter, 234 Wis. 2d at 684, quoting Hughes, 197 Wis. 2d at 980.  The Dieter Court noted that the Lemon Law was designed to provide an incentive to a manufacturer to restore the consumer to the position he was in at the time of purchase.  Dieter, 234 Wis. 2d at 684.

The Court of Appeals elaborated in Herzberg v. Ford Motor Co., 2001 WI App 65, 242 Wis. 2d 316, 626 N.W.2d 67 (Ct.App. 2001):  "This language signals that the Lemon Law is a 'stand alone' statute which is not dependent upon, or qualified by, the UCC. Both *Dieter* and *Hughes* expressly recognized the inadequacies of the UCC as an enforcement tool in this area.  In light of that history, we should not build back into the Lemon Law the shortcomings and roadblocks of the UCC." Herzberg, 242 Wis. 2d at 324.

In addition, the Wisconsin Supreme Court re-emphasized that the Lemon Law is a remedial statute in Garcia v. Mazda Motor of America, Inc., 2004 WI 93, 273 Wis. 2d 612, 682 N.W.2d 365 (2004).  "As we have repeatedly stated, we construe remedial, consumer protection statutes like the Wisconsin Lemon Law 'with a view towards the social problem which the legislature was addressing when enacting the law.' [Citations omitted.]  Put another way, we will liberally construe remedial statutes to suppress the

Case 2:11-cv-00747-LA   Filed 05/15/13   Page 5 of 31   Document 53

mischief and advance the remedy that the legislature intended to afford." <u>Garcia</u>, 273 Wis. 2d at 619, citing <u>Dieter</u>, 234 Wis. 2d at 684; <u>Hughes</u>, 197 Wis. 2d at 979, 982.

As a prevailing consumer under the Wisconsin Lemon Law, the plaintiff is entitled to twice its pecuniary loss. Wisconsin Courts have repeatedly found that the double damage provision gives an incentive to manufacturers to comply with the Lemon Law. Moreover, the legislature specifically incorporated the mandatory double damages to carry out the purpose and intent of the Lemon Law. Accordingly, the plaintiff's pecuniary loss of $184,598.03 must be doubled, for total damages of $369,196.06, consistent with the Lemon Law.

## II.    Interest

### A.    Prejudgment Interest

The plaintiff seeks an award of the prejudgment interest that has accrued on its damages from the date the complaint was filed, July 15, 2011, until the date of the plaintiff's formal settlement offer pursuant to sec. 807.01, Wis. Stats., October 31, 2011.

The authority to award prejudgment interest is based upon common law: "At common law, a party may recover prejudgment interest on damages that are either liquidated or determinable by a 'reasonably certain standard of measurement.'" <u>Erickson v. Gunderson</u>, 183 Wis. 2d 106, 120, 515 N.W.2d 293, 300 (Ct.App. 1994). Prejudgment interest is awarded at the legal rate of five percent. <u>Id</u>.

Where the plaintiff's damages are liquidated, an award of prejudgment interest is appropriate: "The most frequently stated rationale for the rule is that if the amount of damages is either liquidated or determinable by reference to some objective standard, the

defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." Johnson v. Pearson Agri-Systems, Inc., 119 Wis. 2d 766, 771, 350 N.W.2d 127, 130 (1984).

Prejudgment interest reflects the value of the use of a liquidated obligation during the time it remains unpaid: "The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but it simply the value of the use of the money a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead." Nelson v. Travelers Ins. Co., 102 Wis. 2d 159, 169, 306 N.W.2d 71, 76 (1981).

In this case, the plaintiff's damages are a matter of arithmetic applying the formula set forth in sec. 218.0171(2)(b)2.b., Wis. Stats. Accordingly, the plaintiff requests five percent per annum interest on the damages running from the commencement of this action through the date of its settlement offer. Five percent interest on $369,196.06 from July 15, 2011 through October 31, 2011, is $5,462.07.

**B. Statutory Interest**

On October 31, 2011, the plaintiff served a statutory settlement offer, pursuant to sec. 807.01(3) and (4), Wis. Stats., on the defendant (see Exhibit A to the Affidavit of Vincent P. Megna). The defendant did not timely (or ever, for that matter) accept this settlement offer and the amounts awarded to the plaintiff in this action will greatly exceed the value of this settlement offer.

Section 807.01(3), Wis. Stats., provides that a plaintiff may serve a written offer of settlement upon a defendant. If the offer is not accepted by the defendant within 10 days

7

of receipt and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of taxable costs. In addition, the plaintiff is entitled to interest on the amount recovered from the date of the settlement offer until the amount is paid. Sec. 807.01(4), Wis. Stats. The award of interest under sec. 807.01(4), Wis. Stats., serves to encourage acceptance of settlement offers: "Its purpose is not punitive; it exists to encourage settlement of cases prior to trial by providing an incentive to accept reasonable settlement offers." Erickson, 183 Wis. 2d at 124, 515 N.W.2d at 301.

While sec. 807.01, Wis. Stats., is a Wisconsin statute, it has no federal counterpart for plaintiff settlement offers. Accordingly, sec. 807.01, Wis. Stats., has been applied in federal cases. *See* S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist., 60 F. 3d 305 (7th Cir. 1995). The relevant consideration for the Court is whether a failure to apply sec. 807.01, Wis. Stats., would mean that a different result would be reached in federal court than in state court. *See* Dillingham-Healy-Grow-Dew v. Milwaukee Metropolitan Sewerage District, 796 F. Supp. 1191, 1193 (E.D. Wis. 1992), if sec. 807.01, Wis. Stats., is not applied in federal court plaintiff cannot even make an offer of judgment let alone receive twelve percent interest on the judgment. *See also* Datapoint Corp. v. M&I Bank of Hilldale, 665 F.Supp. 722 (W.D. Wis. 1987), finding that to insure the outcome of the litigation in the federal court is substantially the same as in state court requires application of sec. 807.01, Wis. Stats.

Here, the plaintiff offered to accept the sum of $220,000 plus the vehicle loan payoff of $55,098.34, for a total of $275,098.34. (See Exhibit A to the Affidavit of Vincent P. Megna). As set forth in detail above, the plaintiff's damages in this action

total $396,196.06. The plaintiff's recovery of substantially more than the amount specified in its offer of settlement triggers the provisions of sec. 807.01(4), Wis. Stats. By operation of statute, the plaintiff is therefore entitled to twelve percent interest per annum from October 31, 2011 until the amounts awarded are paid. Twelve percent interest on $369,196.06 from October 31, 2011 through May 15, 2013 is $68,093.90 (with a per diem thereafter of $121.38).

## III. Statutory Costs

Pursuant to sec. 814.01, Wis. Stats. and sec. 218.0171(7), Wis. Stats., the plaintiff is entitled to recover the statutory costs associated with this action.

The plaintiff has incurred the following statutory costs (documentation supporting the same is attached as Exhibit B to the Affidavit of Vincent P. Megna filed herewith):

| | |
|---|---|
| Filing fee | $ 269.00 |
| Filing fee (Indiana Dist. Court - Subpoena to Cummins) | $ 46.00 |
| Facsimile charges | $ 68.00 |
| Postage | $ 69.71 |
| Photocopies | $ 270.21 |
| Service fees | $ 125.00 |
| FedEx charges | $ 26.48 |
| Witness fees | $ 59.65 |
| Deposition Transcripts | $1,379.90 |
| **STATUTORY COSTS** | **$ 2,313.95** |

The plaintiff's statutory costs of $2,313.95 are doubled, based upon sec. 807.01, Wis. Stats., and the plaintiff's Settlement Offer. The total statutory costs to be awarded to the plaintiff as doubled are $4,627.90.

## IV. Litigation Costs

Wisconsin Courts have noted that "costs" under fee-shifting statutes include the actual costs incurred during the course of the litigation, not just statutory costs under sec. 814.01, Wis. Stats. Chmill v. Friendly Ford-Mercury, 154 Wis. 2d 407, 453 N.W.2d 197, n.2 (Ct.App. 1990). The Chmill court noted that fee-shifting statutes contemplate that those recovering under them will be made whole. Costs and disbursements under fee shifting statutes include reasonable expenses incurred in litigation above and beyond those taxed as statutory costs by a court clerk. Chmill, 154 Wis. 2d at n.2.

The Wisconsin Supreme Court recently confirmed that an award of costs is to include any other reasonable expenses incurred in litigation in addition to the normal costs and disbursements allowed under sec. 814.04, Wis. Stats. and sec. 809.25, Wis. Stats. Kilian v. Mercedes-Benz USA, LLC, 2011 WI 65, ¶54, 335 Wis. 2d 566, 799 N.W.2d 815 (2011).

The plaintiff has incurred litigation costs as follows (documentation supporting the same is attached as Exhibit C to the Affidavit of Vincent P. Megna filed herewith):

| | |
|---|---|
| Expert witness fees | $ 950.00 |
| Mileage/Parking charges | $ 92.73 |
| Westlaw charges | $ 986.72 |
| **TOTAL LITIGATION COSTS** | **$2,029.45** |

The plaintiff is entitled to recover $2,029.45 for its litigation costs in addition to its statutory costs.

## V.     Attorney Fees

Section 218.0171(7), Wis. Stats. provides that the court shall award "costs, disbursements and reasonable attorney fees." Fee shifting provisions like the one found in sec. 218.0171(7), Wis. Stats., and the factors contained in SCR 20:1.5(a), are intended to ensure that competent plaintiff lawyers are fairly compensated so that consumers can acquire representation and challenge powerful industries that would otherwise ignore important public policy and individual consumer rights.

The Wisconsin Supreme Court explained in <u>Hughes</u>:

[A] potential recovery must be large enough to give vehicle owners the incentive to bring suits against these corporations . . . . These corporations not only have the wealth and will to exhaust an individual litigant, but also control vast amounts of technical expertise on the very mechanical aspects the consumer is challenging. Without the sweetener of . . . reasonable attorneys' fees, few consumers would bring such actions. <u>Hughes</u>, 197 Wis. 2d at 983.

The plaintiff's recovery in this matter is substantial. However, it would have been cost prohibitive for the plaintiff to commence an action without an award of its attorney fees and litigation costs. Thus, the present case illustrates the necessity of awarding mandatory attorney fees and litigation costs so as to enable consumers to effectively and successfully bring a Wisconsin Lemon Law action.

A significant portion of the attorney fees incurred by the plaintiff in this action are attributable to the defendant. Prior to the plaintiff being awarded summary judgment, the

plaintiff made a Settlement Offer pursuant to sec. 807.01, Wis. Stats., which included attorney fees and costs in the sum of $21,800 (see Exhibit A to the Affidavit of Vincent P. Megna). Rather than resolve this matter, the defendant made a strategic decision to continue the litigation. As a result, the defendant now faces much greater liability for the plaintiff's damages as well as plaintiff's attorney fees.

The Wisconsin Supreme Court recently addressed the award of attorney fees under fee shifting statutes. In Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 22, 746 N.W.2d 762 (2008), the Court reiterated that a reasonable attorney fee award is determined utilizing the lodestar methodology. The Stuart Court relied, in part, upon its holding in Kolupar v. Wilde Pontiac Cadillac, Inc., 2004 WI 112, 275 Wis. 2d 1, 683 N.W.2d 58 (2004). See also Kolupar v. Wilde Pontiac Cadillac, Inc., 2007 WI 98, 303 Wis. 2d 258, 735 N.W.2d 93 (2007).

The Wisconsin Supreme Court addressed the legal principles courts are to apply in determining an award of attorney fees in Kolupar, where it adopted the lodestar methodology set forth by the United States Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983):

> It reinforces the circuit court's discretion to set an award within a range of reasonableness and at the same time injects the exercise of that discretion with objectivity and uniformity. These aspirations are so important and desirable that we adopt Hensley's lodestar methodology and direct the circuit courts to follow its logic when explaining how a fee award has been determined. Kolupar, 275 Wis. 2d at 19.

In Hensley, the Supreme Court outlined the lodestar approach: "The most useful starting point for determining the amount of a reasonable fee is the number of hours

reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433. The Hensley Court noted that this calculation may be adjusted (upward or downward) based upon additional factors to be considered.

The factors a court may consider to adjust an attorney fee award arrived at using the lodestar method are set forth in Wisconsin Supreme Court Rule 20:1.5(a), which addresses reasonable attorney fees. Stuart, 2008 WI at ¶ 45; Kolupar, 275 Wis. 2d at 16, 683 N.W.2d at 66. The Supreme Court has endorsed the factors set out in SCR 20:1.5 and encourages courts to apply these factors when they are required to determine attorney fees.

**Analysis of SCR 20:1.5(a) Factors in the Context of the James Michael Case**

Factor No. 1: The Skills Required, the Time Required and the Novelty of the Case

Automobile misrepresentation and warranty litigation is a unique area of law that few attorneys are familiar with or specialize in. Plaintiff's counsel has developed expertise in this area and established an outstanding reputation. Attorney Megna has handled consumer automobile warranty claims almost exclusively for 23 years and Attorney Grzeskowiak has done so for more than 10 years. Their hard work and skill resulted in a complete victory for the plaintiff.

This is not a typical Wisconsin Lemon Law case. Prior to suit being filed, a dispute arose between the parties regarding the amount of the refund due to the plaintiff. The dispute centered around the reasonable allowance for use under sec.

13

218.0171(2)(b)2.b., Wis. Stats., and continued into the litigation. The parties' differing interpretations of the reasonable use allowance presented an issue of first impression. There were additional unique issues presented by this case surrounding whether the defendant violated the Wisconsin Lemon Law.

Early in the proceedings, the plaintiff got the defendant to stipulate that the plaintiff's vehicle qualified as a "lemon." Thereafter, through discovery and depositions, the plaintiff was able to establish facts that entitled it to an award of summary judgment such that only the narrow issue of the amount of the reasonable use allowance remained. An award of summary judgment to the plaintiff is rare in Lemon Law cases, especially one involving unusual circumstances.

The plaintiff achieved a total victory through the knowledge, experience and skill of plaintiff's counsel. Few attorneys would have recognized the issues presented in this case and even fewer would have been willing to file a lawsuit given the risk of receiving no payment whatsoever.

The time spent by plaintiff's counsel was reasonable and necessary to bring this matter to a successful resolution. We have provided substantial detail as to what was done, by whom, when, how long it took to perform each task, and the amounts charged/accrued accordingly (see Exhibit D to the Affidavit of Vincent P. Megna).

Factor No. 2: Preclusion of Other Work

This factor is not applicable to this case; had we not been working on this case, we would have been working on other consumer cases earning the same hourly rates.

Factor No. 3:  The Customary Fee

Aiken & Scoptur, S.C.'s billing rates of $395 per hour for Attorney Megna, $490 per hour for Attorney Aiken, $345 per hour for Attorney Grzeskowiak, and $155 per hour for paralegal time, are our current standard billing rates for all automobile misrepresentation and warranty enforcement cases (see Para. 6 of the Affidavit of Vincent P. Megna). The attorney fees requested in this case are within the range of fees customarily awarded by courts in such cases and paid through settlement negotiations. The Wisconsin Supreme Court has recognized that the prevailing community rate, recent fees awarded by courts or through settlement are useful guides in setting an appropriate attorney fee award. Standard Theatres, Inc. v. State, 118 Wis. 2d 730, 748, 349 N.W.2d 661, 671 (1984).

Plaintiff's counsel have routinely been awarded attorney fees based upon their standard hourly billing rates. After reaching a stipulation regarding the plaintiffs' damages, they were awarded 100% of the fees requested at their 2011 rates, in McNeely v. McAdams Car Company, Milwaukee County Case No. 10-CV-13612 (see Exhibit E to the Affidavit of Vincent P. Megna). Similarly, in Scharf v. Ford Motor Company, Milwaukee County Case No. 11-CV-012460, plaintiff's counsel received a fee award at their 2012 hourly rates based upon the parties' stipulation to resolve the plaintiff's claims and have the Court decide the amount of fees to be paid by the defendant (see Exhibit F to the Affidavit of Vincent P. Megna).

In March 2010, after a jury trial and post-verdict motions, counsel was awarded a total of $301,707.00 in attorney fees in Marquez v. Mercedes-Benz USA, LLC, Waukesha County Case No. 05-CV-2885. The Court approved the 2010 hourly rates of

counsel at $340 for non-trial and $395 per hour for trial for Attorney Megna, $295 per hour for non-trial and $345 per hour for trial for Attorney Grzeskowiak, $450 per hour for trial and $387 per hour for non-trial for Attorney Aiken and $105 per hour for paralegal time (see p. 8 and p. 10-11 of Exhibit G to the Affidavit of Vincent P. Megna). The Court recognized that counsel were "expert attorneys, trial attorneys in the area of lemon law" and included in its analysis our background of trial attorney competency and legal competency in the areas at issue (see p. 10 of Exhibit G to the Affidavit of Vincent P. Megna).

Another recent decision awarding plaintiff's counsel fees was made by the Court in <u>Felice v. Toyota Motor Sales, U.S.A., Inc.</u>, Dane County Circuit Court Case No. 10-CV-000451. After winning a jury trial on the plaintiff's Wisconsin Lemon Law claim, counsel was awarded $211,0793.38 in costs and attorney fees. The Court found the hourly rates charged by counsel to be reasonable. "Ms. Grzeskowiak has been associated with firms that have specialized. And I think there are differences between the Milwaukee market and the Madison market. I'm not -- I'm not shocked at her 310 and 345 an hour rates" (see p. 134 of Exhibit H to the Affidavit of Vincent P. Megna).

Similarly, the Court approved Attorney Megna's hourly rate of $355 for non-trial time: "Mr. Megna has a reputation in the field, apparently wrote a book on the subject. And I'm not troubled by his -- that hourly rate" (see p. 133 of Exhibit H to the Affidavit of Vincent P. Megna). In addition, the Court recognized Attorney Aiken's "big reputation" and noted that he has had a good reputation for many years. The Court awarded Attorney Aiken's fees at hourly rates of $400 for out of court and $500 in court

(see p. 134-135 of Exhibit H to the Affidavit of Vincent P. Megna). The Court also awarded paralegal fees at the rate of $115 per hour.

Plaintiff's counsel has also been paid at their current hourly rates through settlement stipulations. The parties entered into a joint stipulation for payment of the plaintiff's attorney fees and costs subsequent to the jury trial in <u>Jewel Trucking, Inc. v. Freightliner, LLC</u>, United States District Court for the Western District of Wisconsin Case No. 10-CV-33 (see Exhibit I to the Affidavit of Vincent P. Megna). Pursuant to the stipulation, Freightliner agreed to payment of $225,000.00 to counsel for the attorney fees and litigation costs incurred by the plaintiff, which included payment at their 2010 hourly rates of $475 per hour for non-trial time and $625 per hour for trial for Attorney Aiken, $340 per hour for non-trial time and $395 per hour for trial for Attorney Megna and $295 per hour for non-trial time for Attorney Grzeskowiak (see Para. 12 of the Affidavit of Vincent P. Megna).

Similarly, a stipulation for payment of plaintiff's counsel fees was entered into after the jury trial in <u>Van Natta v. General Motors Corp.</u>, Waukesha County Circuit Court Case No. 07-CV-2365, counsel reached a stipulation with General Motors regarding the plaintiffs' damages, costs and attorney fees (see Exhibit J to the Affidavit of Vincent P. Megna). General Motors agreed to pay the sum of $259,362.78 to counsel in costs and attorney fees at our 2008 hourly rates, of $285 per hour for Attorney Megna, $450 per hour for non-trial time and $600 per hour for trial time for Attorney Aiken and $265 per hour for Attorney Grzeskowiak (see Para. 13 of Exhibit J to the Affidavit of Vincent P. Megna). Said sum represented **100% of the attorney fees and costs submitted**. The

plaintiffs' trial victory resulted in General Motors payment of $380,239.78 to the plaintiffs and counsel.

Attorney fees in automobile warranty cases are substantial as demonstrated by the awards and stipulations referenced above. The attorney fees requested in this case are within the range of fees customarily awarded in such cases.

Further, the case of Crawford County v. Masel, 2000 WI App 172, 238 Wis. 2d 380, 617 N.W.2d 188 (Ct.App. 2000), provides the Court with much assistance in determining reasonable attorney fees. The Court of Appeals held that the appropriate measure of a reasonable attorney fee should be based on "the prevailing market rates in the relevant community." The requested rates must be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate. Crawford, 238 Wis. 2d at 385. In Crawford, the Court of Appeals found that the trial court had erroneously exercised its discretion in awarding a rate lower than the current market rate for the type of work involved. The trial court was ordered on remand to determine the reasonable rate based upon the market rate in the community of civil rights attorneys with skills and experience comparable to the attorney at issue. Crawford, 238 Wis. 2d at 391.

To support the fact that Aiken & Scoptur, S.C.'s hourly rates represent approximate average rates for attorneys successfully prosecuting Lemon Law actions with our experience in Wisconsin, consistent with Crawford, we have submitted herewith the Affidavit of Todd E. Gadtke and the Affidavit of Lawrence Alan Towers.

18

Attorney Gadtke has handled Lemon Law and Magnuson-Moss Warranty Act cases, representing both vehicle manufacturers and consumers, throughout Minnesota and Wisconsin since 1998 (see Para. 1 of the Affidavit of Todd E. Gadtke). He initially represented several different vehicle manufacturers and later began representing only consumers in 2000 (see Paras. 2-3 of the Affidavit of Todd E. Gadtke). Attorney Gadtke has handled in excess of 1,400 Lemon Law and/or Magnuson-Moss Warranty Act cases (see Para. 4 of the Affidavit of Todd E. Gadtke). He has presented a continuing legal education course on the Minnesota Lemon Law and has been on the teaching faculty of ProSource Educational Services where he lectured to the insurance and real estate industry on the Lemon Law (see Para. 5 of the Affidavit of Todd E. Gadtke). In the majority of cases, Attorney Gadtke has been paid his attorney fees based upon his then-existing hourly rate (see Para. 4 of the Affidavit of Todd E. Gadtke). Attorney Gadtke's current hourly rate for 2013 is $375.00 per hour (see Para. 6 of the Affidavit of Todd E. Gadtke). Attorney Gadtke has a paralegal that assists him in Lemon Law and Magnuson-Moss Warranty Act cases at an hourly rate of $165.00 per hour (see Para. 7 of the Affidavit of Todd E. Gadtke).

Attorney Towers is one of few Wisconsin attorneys with comparable experience and a comparable success rate to Attorneys Megna and Grzeskowiak in this area of the law. Attorney Towers has concentrated his practice in representing Wisconsin consumers in Lemon Law/automobile warranty litigation for over twenty years, similar to Attorneys Megna and Grzeskowiak (see Para. 1 of the Affidavit of Lawrence Alan Towers). In addition, Attorney Towers was a law professor at Marquette University Law School for

19

over five years, and has authored articles and book chapters on lemon law litigation for the Wisconsin Bar Association, Am Jur <u>Modern Trials</u>, Am Jur <u>Proof of Facts</u>, Encyclopedia Britannica's <u>Guide to American Law</u>, and ATLA's <u>Trial Magazine</u> (see Para. 1 of the Affidavit of Lawrence Alan Towers).

Attorney Towers has resolved more than 600 automobile warranty cases where the motor vehicle manufacturers paid his attorney fees based on his then-existing hourly rate in almost all such cases (see Para. 2 of the Affidavit of Lawrence Alan Towers). Attorney Towers has accepted all Lemon Law/automobile warranty cases on a contingent basis and petitions for attorney fees based upon his hourly billing rates (see Para. 3 of the Affidavit of Lawrence Alan Towers). Attorney Towers' 2013 hourly billing rate is $350 per hour (see Paras. 3-4 of the Affidavit of Lawrence Alan Towers). Attorney Towers billing rates have been routinely approved over the years by State of Wisconsin Circuit Courts and Federal Courts for the Eastern and Western Districts of Wisconsin (see Paras. 5-6 of the Affidavit of Lawrence Alan Towers).

Over the past many years Attorneys Megna and Grzeskowiak have prosecuted a very large percentage of the automobile warranty claims brought by consumers throughout the State of Wisconsin. From the above (as well as the affidavits filed herewith), it is clear that the $395-$345 per hour charged by Aiken & Scoptur, S.C. for Attorneys Megna and Grzeskowiak are both reasonable rates and in line with the prevailing market rate in the community for plaintiff counsel prosecuting automobile warranty claims in Wisconsin.

In addition, Attorney Aiken's rate is reasonable for plaintiff counsel with his experience and expertise. Attorney Aiken has concentrated his practice on the litigation of plaintiff's rights for over 30 year (see Para. 2 of the Affidavit of Timothy J. Aiken). Attorney Aiken believes he has tried more cases to verdict than any other prominent Wisconsin plaintiff trial attorney in the past 20 years and handled more appellate cases than any other Wisconsin plaintiff trial attorney (see Para. 11 of the Affidavit of Timothy J. Aiken). Almost all of Attorney Aiken's trial litigation is accepted on a purely contingent fee basis, the majority of which being a 40% contingency fee based on the gross recovery, with all courts to date approving the 40% contingency rate when requested (see Paras. 5-6 of the Affidavit of Timothy J. Aiken). In addition to contingency work, Attorney Aiken has performed legal services at an hourly fee rate (see Paras. 7-8 of the Affidavit of Timothy J. Aiken).

In Wisconsin Lemon Law actions, Attorney Aiken has been paid at his then-existing hourly rates. Attorney Aiken was compensated at his 2008 hourly rates of $450 per hour for non-trial time and $600 per hour for trial time in the <u>Van Natta v. General Motors Corp</u>. case referenced above. In fact, General Motors stipulated to payment of Attorney Aiken's time at such rates and paid Attorney Aiken in full for his time (see Para. 9 of the Affidavit of Timothy J. Aiken).

More recently, in the case of <u>Jewel Trucking, Inc. v. Freightliner</u> referenced above, Freightliner stipulated to pay attorney fees that included payment of Attorney Aiken's 2010 hourly rates of $475.00 for non-trial time and $625.00 per hour for trial time (see Para. 10 of the Affidavit of Timothy J. Aiken). In addition, after a jury trial in

<u>Felice v. Toyota Motor Sales, U.S.A., Inc.</u>, the Court awarded Attorney Aiken attorney fees at the hourly rates of $400 per hour for non-trial time and $500 per hour for trial time (see Exhibit H to the Affidavit of Vincent P. Megna).

Attorney Aiken's hourly rate is reasonable for a litigation attorney of his caliber and within the rates charged by litigation attorneys in Wisconsin.

<u>Factor No. 4:  The Amount Involved and the Results Obtained</u>

As set forth in detail above, there was a tremendous amount involved for the plaintiff.  The judgment for the plaintiff will be nearly a half million dollars, not including its attorney fees.  If the plaintiff had not prevailed, it could have received nothing.  Or, if the Court agreed with the defendant's calculation of pecuniary loss, the plaintiff could have recovered approximately $3,000.

The award of summary judgment in favor of the plaintiff resulted in a 100% victory for the plaintiff.  Further, because of the stipulations between the parties, the plaintiff was able to get a full recovery without the risk and uncertainty of a trial.  The plaintiff could not have obtained a better result than the judgment attained here.

<u>Factor No. 5:  The Time Limitations Imposed by the Client or the Circumstances</u>

This factor does not appear applicable; the time requirements were the usual ones in a civil litigation.

<u>Factor No. 6:  The Nature and Length of the Professional Relationship with the Client</u>

No discount of the fees based on the anticipation of other legal work from the plaintiff is indicated by this factor (as may be the case between the defendant and its counsel).

<u>Factor No. 7:  The Lawyer's Experience, Reputation and Ability</u>

Plaintiff's counsel has successfully represented clients at all stages of automobile warranty and misrepresentation claims, including pre-litigation settlements, certified arbitration proceedings, mediation, jury trials, and appeals [most recently, successfully representing the consumer before the Wisconsin Supreme Court in <u>Marquez v. Mercedes-Benz USA, LLC</u>, 2012 WI 57, 341 Wis. 2d 119, 815 N.W.2d 314].  We submit that our background shows substantial experience, reputation and ability in the area of automobile warranty litigation.

Attorney Megna has gained successful resolution of more than 1,500 automobile misrepresentation and warranty cases over a 23 year period against most of the major automobile companies, as well as leading motor home and motorcycle manufacturers and automobile dealers.  Attorney Megna has worked in the area of automobile warranty and misrepresentation litigation since 1990, and has been practicing law since 1973.  Attorney Grzeskowiak has been practicing law since 1998 and has worked in the area of automobile misrepresentation and warranty litigation since 2000 (see Paras. 14 and 15 of the Affidavit of Vincent P. Megna).

Attorney Megna has been consulted by such diverse entities as <u>CNN</u>, <u>Bloomberg Television</u>, <u>CBS News' 48 Hours</u>, <u>Prime Time Live</u>, <u>Inside Edition</u>, <u>The Associated Press</u>, <u>The Wall Street Journal</u>, <u>Kiplinger's Personal Finance</u>, <u>Automotive News</u>, <u>The Washington Post</u>, <u>Detroit Free Press</u>, <u>WGN-TV</u> (Chicago), <u>KHOU-TV</u> (Houston) and <u>KPNX-TV</u> (Phoenix), for consumer information regarding automobile warranty claims,

and has been a guest speaker at the University of Wisconsin Law School and Marquette University Law School on such topics.

Attorney Megna also spoke on Lemon Law/consumer law issues at the University of Georgia Law School and the University of Houston Law School. Additionally, Attorney Megna has been a speaker on consumer law at various seminars, including those sponsored by the State Bar of Wisconsin, Wisconsin Academy of Trial Lawyers, the Volunteer Lawyers Project, and the National Association of Consumer Advocates (NACA).

In September of 2010, South Korean TV network Seoul Broadcasting System (SBS) sent a producer to Wisconsin to film Attorney Megna for a documentary on the Wisconsin Lemon Law and lemon laws in general which aired in South Korea in October of 2010.

Attorney Megna wrote a book, Bring on Goliath: Lemon Law Justice in America (published October, 2003), that gained national attention and favorable reviews. For example, Warren Brown of The Washington Post has declared *Bring on Goliath* as "simply the best book I have ever read on consumer justice. . ." (October 8, 2003). Attorney Megna has since been speaking to various social, government, education and media organizations throughout the United States in the furtherance of consumer education/rights. In December of 2003, Attorney Megna was honored for his work as one of the ten lawyers of the year by Lawyers Weekly USA.

In 2006, 2007, 2008, and 2009 Attorney Megna was chosen as one of Wisconsin's Super Lawyers in Wisconsin Super Lawyers & Rising Stars by Law & Politics and

Milwaukee Magazine.  Attorney Grzeskowiak was also recognized as a Rising Star in 2006, 2007, 2008, 2010, 2011 and 2012.

Attorney Grzeskowiak has concentrated her practice in Wisconsin Lemon Law/consumer automobile warranty law since 2000.  During that time, she has successfully represented consumers from commencement of litigation through jury trials.  In addition, she has prevailed in numerous cases before the Court of Appeals and Wisconsin Supreme Court regarding significant consumer issues.  Attorney Grzeskowiak has been a guest speaker at Alverno College regarding the Lemon Law and consumer issues.

Attorney Grzeskowiak does a substantial amount of work litigating automobile warranty and misrepresentation cases by taking and defending depositions, brief writing and argument at motion hearings as reflected in the billing statements in this action.  Attorney Grzeskowiak has extensive knowledge regarding automobile warranty and misrepresentation cases and considerable experience handling such cases on behalf of Wisconsin consumers.

There are few, if any, attorneys in the United States, let alone Wisconsin, with the experience and reputation of Attorneys Megna and Grzeskowiak in the unique area of automobile warranty and misrepresentation litigation.

Similarly, Attorney Aiken is one of the most experienced and successful plaintiff trial attorneys in Wisconsin.  Attorney Aiken has been a lecturer for the State Bar of Wisconsin, National Business Institute, Wisconsin Academy of Trial Lawyers, Wisconsin State Judiciary Association, American Bar Association, Law Education Institute, Inc.,

Campbell University, Marquette University Law School, Association of Trial Lawyers of America, and State of Wisconsin Circuit Court (see Exhibit A to the Affidavit of Timothy J. Aiken). Attorney Aiken serves as a Clinical Presenter for the Medical College of Wisconsin Psychiatric Residency program and twice taught as the Kehlehem Scholar for Norman Wiggins School of Law Campbell University (see Exhibit A and Exhibit B to the Affidavit of Timothy J. Aiken). Attorney Aiken has also been an Adjunct Professor of Law at Marquette University Law School.

In addition, Attorney Aiken has held various positions for the Wisconsin Academy of Trial Lawyers, including program chair, legislative chair, president, vice-president, secretary, treasurer and served on the board of directors (see Exhibit A and Exhibit B to the Affidavit of Timothy J. Aiken). He has been recognized as one of Wisconsin's Super Lawyers in Wisconsin Super Lawyers & Rising Stars by Law & Politics and Milwaukee Magazine and was selected for inclusion in the 2012 Edition of The Best Lawyers in America. Attorney Aiken was also selected as one of America's Most Honored Professionals in the 2011 edition.

Attorney Aiken obtained several verdict awards which were record awards in Wisconsin at the time of the verdicts, including the highest verdict in a hospital malpractice trial, the highest verdict by a Wisconsin lawyer in a medical malpractice trial, the highest punitive damage verdict in a personal injury trial, the highest damage verdict in a product liability trial and the highest damage verdict for a single plaintiff in trial (see Exhibit B to the Affidavit of Timothy J. Aiken).

26

Due to his exceptional reputation, Attorney Aiken has been invited to assist in handling litigation in Wisconsin, Iowa, Michigan, Indiana, Kentucky, New York, Utah and Arizona (see Para. 3 of the Affidavit of Timothy J. Aiken). He helped win a record verdict for wrongful death loss of consortium in Iowa and helped secure one of the highest settlements in Canadian history (see Exhibit B to the Affidavit of Timothy J. Aiken). Attorney Aiken has also taught trial law in a majority of states and Canada (see Para. 3 of the Affidavit of Timothy J. Aiken).

There are few Wisconsin attorneys that have achieved the notoriety and success that Attorney Aiken has earned. Attorney Aiken is clearly among the best, if not the best, litigator of plaintiff rights in Wisconsin.

Factor No. 8: Fee Arrangement

Plaintiff's counsel agreed to look to the defendant for payment of their attorney fees and costs pursuant to sec. 218.0171(7), Wis. Stats. (see Para. 5 of the Affidavit of Vincent P. Megna). This obviously meant that plaintiff's attorneys were working on a form of a contingent fee wherein anything but a victory for the plaintiff would mean that they worked for free. They took on this action with the substantial risk that no payment would ever be gained. If the plaintiff had not prevailed, plaintiff's counsel would have received nothing.

Fees Requested in the James Michael Case

The details of the attorney fees incurred are included within Exhibit D to the Affidavit of Vincent P. Megna in the form of a computer print-out which includes the date the work was performed, who performed the work (TJA = Timothy J. Aiken, VPM =

Vincent P. Megna, SMG = Susan M. Grzeskowiak, EEK = Erin Kandziora), what work was done, how long work took to perform (maintained at 1/10 and 1/4 hour increments), and the amounts charged/accrued for such work (number of hours reasonably expended multiplied by the applicable hourly rate.

Through May 15, 2013, the plaintiff has incurred legal fees in the sum of $160,947.75 representing 461.50 hours as set forth below:

| | | |
|---|---|---|
| Vincent P. Megna | 89.15 hours at $395 | $ 35,214.25 |
| Timothy J. Aiken | 21.55 hours at $490 | $ 10,559.50 |
| Susan M. Grzeskowiak | 320 hours at $345 | $110,400.00 |
| Erin E. Kandziora | 30.8 hours at $155 | $  4,774.00 |
| TOTAL | 461.50  hours | $160,947.75 |

It should be noted that due to the delay in payment (plaintiff's counsel has been working on this case since July of 2011 without receiving any compensation), plaintiff's counsel must be compensated for such hours at their current hourly rates in accordance with the United States Supreme Court's decision in Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463 (1989).

In Jenkins, the U.S. Supreme Court reviewed the appropriate method of awarding attorney fees under a fee-shifting statute. "First is the matter of delay. When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later…. Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award

on current rates or by adjusting the fee based on historical rates to reflect its present value." Id., 491 U.S. at 282, 109 S.Ct. at 2468.

The Supreme Court recognized that compensation received several years after the services were rendered is not equivalent to the same dollar amount received promptly as the services are performed and found that an adjustment for delay in payment was appropriate. Id., 491 U.S. at 283, 109 S.Ct. at 2469.

The U.S. Supreme Court went on to note that if attorneys were not provided compensation for the delay in payment, the prospect of such hardship could well deter otherwise willing attorneys from accepting cases that might offer great benefit to society at large and would result in defeating the purpose of enacting laws which encourage enforcement of laws through lawsuits by private persons. Id., 491 U.S. at 284, 109 S.Ct. at 2469, n. 6.

The principles noted by the U.S. Supreme Court in Jenkins apply to an award of attorney fees under sec. 218.0171(7), Wis. Stats. The Wisconsin Lemon Law is a consumer protection statute that allow consumers to act as "private attorney generals" by enforcing the law through actions brought by individuals with the assistance of their own counsel. Attorneys willing to represent consumers in such actions must be adequately compensated, including compensation for delay in payment, to ensure that consumers continue to have representation.

The present case illustrates the need to compensate attorneys for the delay in payment. Since 2011, plaintiff's counsel has aggressively represented plaintiff without receiving any payment whatsoever. Beyond that, plaintiff's counsel has actually

expended money to cover the costs throughout this litigation. Awarding plaintiff's counsel attorney fees based upon their current hourly rates to compensate for delayed payment is more than fair and reasonable.

We submit that the plaintiff's request for attorney fees is reasonable considering the facts and circumstances of this case. We respectfully request an award of the plaintiff's attorney fees in the amount sought herein, as well as an award of the fees arising out of the fee litigation.

## Summary

Based upon the above, in summary, we believe that the plaintiff is entitled to, and we accordingly request judgment in favor of the plaintiff for, at least the following:

| | |
|---|---|
| Twice plaintiff's pecuniary loss to date | $369,196.06 |
| Interest (5% from July 15, 2011 to October 31, 2011) | $  5,462.07 |
| Interest (12% from November 1, 2011 to May 15, 2013 under sec. 807.01, Stats.)* | $ 68,093.90 |
| Statutory Costs (as doubled under sec. 807.01, Stats.) | $  4,627.90 |
| Litigation Costs | $  2,029.45 |
| Attorney Fees (through May 15, 2013)** | $160,947.75 |

*Continues to accrue until judgment amount is paid.
**Continue to accrue as additional work becomes necessary.

Dated this ___15th___ day of May, 2013.

Attorneys for Plaintiff


By:___s/Susan M. Grzeskowiak_____
       TIMOTHY J. AIKEN
       State Bar. No. 1015763
       VINCENT P. MEGNA
       State Bar No. 1013041
       SUSAN M. GRZESKOWIAK
       State Bar No. 1031586
       Aiken & Scoptur, S.C.
       2600 N. Mayfair Rd., Suite 1030
       Milwaukee, WI 53226
       Phone No. (414) 225-0260
       Fax No. (414) 225-9666
       Email: tim@aikenandscoptur.com
            vince@aikenandscoptur.com
            susan@aikenandscoptur.com