UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**JAMES MICHAEL LEASING CO., LLC,**
        Plaintiff,

    v.                                      Case No. 11-C-0747

**PACCAR INC., d/b/a Kenworth
Truck Company,**
        Defendant.

## DECISION AND ORDER

In previous orders, I granted summary judgment to the plaintiff on its claim under the Wisconsin lemon law. The parties have since stipulated to certain matters concerning the amount of plaintiff's total damages, and the plaintiff has filed a motion for judgment and attorney fees. I address that motion in this order.

**A.    Pecuniary Loss**

As previously determined, plaintiff is entitled to twice the amount of its pecuniary loss, including twice the amount of the full purchase price of the vehicle. The plaintiff has calculated its pecuniary loss as follows:

| | |
|---|---|
| Full purchase price, excise taxes, extended warranties, and service fee | $135,847.00 |
| Title and loan filing fees | $53.00 |
| Collateral costs | $11,767.87 |
| Finance charges paid (plus per diem interest of $5.59 until paid) | $38,805.16 |
| Reasonable use allowance | ($1,875.00) |
| PECUNIARY LOSS | $184,598.03 |

Defendant does not object to this calculation. Therefore, twice the amount of plaintiff's pecuniary loss is $369,196.06.

**B.      Prejudgment Interest**

Plaintiff requests prejudgment interest at the rate of 5% from the date it filed suit (July 15, 2011) to the date it tendered a formal settlement offer under Wis. Stat. § 807.01 (October 31, 2011) in the amount of $2,730.24. Defendant does not dispute that plaintiff is entitled to recover prejudgment interest. Accordingly, the amount of $2,730.24 will be added to the judgment.[1]

**C.      Interest Based on Settlement Offer**

On October 31, 2011, plaintiff served a settlement offer on defendant pursuant to Wis. Stat. § 807.01. Under subsection (4) of that statute, if the defendant does not accept the settlement offer and the plaintiff goes on to recover a judgment which is greater than or equal to the amount specified in the offer of settlement, the plaintiff is entitled to interest on the "amount recovered" from the date of the offer of settlement until the amount is paid. There is no dispute that the amount plaintiff will recover is greater than the amount specified in the offer of settlement. However, the parties dispute the applicable interest rate.[2] The dispute arises because § 807.01(4) was amended during the pendency of this

---

[1]Plaintiff originally requested prejudgment interest on double the amount of its pecuniary loss. However, in response to defendant's argument that prejudgment interest should be calculated before the pecuniary loss is doubled, plaintiff conceded that prejudgment interest should be calculated based on single damages. See Reply Br. at 2 n.1, ECF No. 75.

[2]Defendant also contends that interest should not be awarded on double the amount of plaintiff's pecuniary loss. However, the "amount recovered" by plaintiff includes double the pecuniary loss, and therefore interest must be calculated based on that amount.

action. See 2011 Wis. Act 69. At the time plaintiff made its settlement offer, the statute provided for interest on the amount recovered at the rate of 12%. However, effective December 2, 2011, the interest rate was changed to "1 percent plus the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year." Here, the parties agree that 1% plus the applicable prime rate is 5%, and plaintiff concedes that this rate applies from the effective date of Act 69 until the judgment is paid. However, plaintiff contends that it is entitled to 12% interest from the date of the settlement offer until Act 69's effective date. Defendant contends that the rate should be 5% for the entire period.

Act 69 states that it "first applies to an execution on a judgment entered on the effective date of this subsection." 2011 Wis. Act 69, § 4. I understand this language to mean that the applicable interest rate is determined by the date judgment is entered. Here, judgment will be entered after December 2, 2011, and therefore the new interest rate applies. No language in Act 69 suggests that the legislature intended the old rate of 12% to apply for any time period prior to December 2, 2011 when the judgment is entered on or after that date.

Plaintiff cites Ferris v. First National Bank and Trust Co. of Racine, 96 Wis. 2d 476 (Ct. App. 1980), in support of its argument that the 12% rate should apply to the period prior to the effective date of Act 69. Ferris involved an Act that amended the statute governing post-judgment interest. Id. at 483. At the time the judgment was entered, the statute provided that the interest rate was 5%. In 1971, before the judgment was paid, the rate was raised to 7%. See Ch. 41, Laws of 1971. In Ferris, the parties agreed that the

3

5% interest rate applied to the period between entry of judgment and the effective date of the Act increasing the rate to 7%. The parties disputed whether the 7% rate applied to the period after the effective date of the Act. The court of appeals concluded that it did. Ferris, 96 Wis. 2d at 483–84.

Plaintiff argues that under the logic of Ferris, the old rate in § 807.01(4) should apply between the date of the settlement offer and the effective date of Act 69. However, there is no logic in Ferris that supports this result. In Ferris, the parties conceded that the old rate applied to the period before the Act took effect, and thus the court had no need to consider whether the new rate applied to that period. The question in Ferris was whether the new rate applied to the period after the Act's effective date despite the fact that the judgment was entered prior to the Act's effective date. The Act at issue in Ferris, unlike Act 69, did not have language indicating that the date of the judgment would determine the applicable interest rate. See Ch. 141, Laws of 1971. Thus, Ferris is not instructive on the meaning of Act 69. Instead, I follow the plain language of Act 69 and conclude that because the judgment in this case will be entered after the Act's effective date, all interest on the amount recovered must be awarded at the new rate.

**D.     Statutory Costs**

Under Wis. Stat. §§ 814.01(1) and 218.0171(7), plaintiff is entitled to an award of costs. The plaintiff states that its costs are $2,313.95, and defendant does not dispute this amount. Moreover, under Wis. Stat. § 807.01(3), a plaintiff that serves a settlement offer and goes on to recover a more favorable judgment is entitled to double the amount of its

4

costs. Again, defendant does not dispute this. Therefore, $4,627.90 will be added to the judgment.

**E.     Litigation Costs**

Under the Wisconsin lemon law, a prevailing plaintiff is entitled to recover reasonable expenses incurred in litigation. Kilian v. Mercedes-Benz USA, LLC, 335 Wis. 2d 566, 593 (2011). Plaintiff states that its reasonable litigation costs total $2,029.45, and defendant does not dispute this amount. Therefore, $2,029.45 will be added to the judgment.

**F.     Attorney Fees**

The Wisconsin lemon law provides that the court shall award a prevailing consumer reasonable attorney fees. Wis. Stat. § 218.0171(7). The Wisconsin courts have adopted the lodestar approach to determining a reasonable fee, under which the court starts by identifying the number of hours reasonably expended on the litigation and then multiplies that number by a reasonable hourly rate. Stuart v. Weisflog's Showroom Gallery, Inc., 308 Wis.2d 103, 130 (2008); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Once a trial court makes the lodestar assessment it may adjust that number up or down to account for matters beyond those already encompassed by the lodestar analysis. Stuart, 308 Wis. 2d at 130; Kolupar v. Wilde Pontiac Cadillac, Inc., 275 Wis.2d 1, 18–19 (2004). The factors the court may consider include those set forth in Wisconsin Supreme Court Rule 20:1.5(a).³ Stuart, 308 Wis. 2d at 130. The court's ultimate goal is to "determine what

---

³The SCR 20:1.5(a) factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged

5

the lawyer would receive if he were selling his services in the market rather than being paid by court order." In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992). As the Seventh Circuit has recognized, this process is difficult and imprecise, especially when the fee must be determined on an hourly basis rather than through use of a fixed or contingent fee. See, e.g., Kirchoff v. Flynn, 786 F.2d 320, 324–25 (7th Cir. 1986). An hourly fee creates an incentive to run up hours, to do too much work in relation to the stakes of the case, making it necessary to monitor the lawyer's work. The general counsel of a corporation or a sophisticated client may perform this monitoring function well, but in fee-shifting cases, the plaintiff usually has little ability to monitor and also has little incentive to do so, knowing that the defendant will pay the bill. So the court rather than the plaintiff must do the supervision. Yet, this is very difficult to do, especially since the court, unlike a paying client, first sees the fee request at the end of the case, long after the decisions to do the work have been made. Id. at 325. Still, I must perform my supervisory role, and below I give a "concise but clear explanation of my reasons." See, e.g., Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 551 (7th Cir. 1999).

Plaintiff requests fees in the amount of $160,947.75 for work performed by its attorneys through May 15, 2013. This includes work performed by three attorneys and one paralegal, as follows:

---

in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

6

| | | |
|---|---|---|
| Vincent P. Megna | 89.15 hours at $395 | $35,214.25 |
| Timothy J. Aiken | 21.55 hours at $490 | $10,559.50 |
| Susan M. Grzeskowiak | 320 hours at $345 | $110,400.00 |
| Erin E. Kandziora | 30.8 hours at $155 | $4,774.00 |
| TOTAL: | 461.50 hours | $160,947.75 |

My first task is to determine whether the hourly rates charged by these professionals are reasonable. One of plaintiff's attorneys has submitted an affidavit in which he states that the above rates are each person's "current standard hourly billing rates for automobile warranty enforcement cases." See Megna Aff. ¶ 6, ECF No. 57. However, the lawyer does not also say that he has any clients that actually pay these rates. Rather, it appears that these are rates that the attorneys use when they make fee requests to courts or to their opponents in fee-shifting litigation. See Mem. in Supp. of Fee Request at 15–18, ECF No. 53. Still, courts have recognized that "rates awarded in similar cases are clearly evidence of an attorney's market rate." People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1312 (7th Cir. 1996). Therefore, I can use the rates awarded in similar cases as evidence of reasonable rates. But a further problem is that none of the earlier cases awarded rates as high as plaintiff currently asks for. Rather, the highest rate Attorney Megna has been awarded is $355, the highest rate Attorney Grzeskowiak has been awarded is $310, and the highest rate a paralegal has been awarded is $115.[4] Moreover, although plaintiff has submitted affidavits from two other lemon-law attorneys in support of its rate request, those attorneys charge less than some of the plaintiff's lawyers in this case: one attorney charges

---

[4]These attorneys may have been awarded higher rates for trial time, but there has been no trial in this case. Thus, I use their "non-trial" rates.

7

$350 per hour, and the other charges $375 per hour. See Towers Aff. ¶ 4; Gadtke Aff. ¶ 6. Plaintiff has not explained why it was reasonable to pay Attorney Megna a rate of $395 per hour and Attorney Aiken a rate of $490 per hour, rather than the lower rates charged by other lemon-law attorneys.

It also appears that this case was slightly overstaffed. Attorneys Megna and Grzeskowiak are Wisconsin lemon-law experts and are very experienced litigators. See Mem. in Supp. of Fee Request at 23–25. Given this, it is hard to understand why plaintiff would also hire Attorney Aiken at a rate of $490 an hour. What expertise could he have brought to the case that Megna and Grzeskowiak did not already possess? The plaintiff states that "Attorney Aiken is an experienced litigator who was able to analyze the case and briefing from a different viewpoint." Reply Br. at 12, ECF No. 175. That may be true, but I think it is unreasonable to bring a third lawyer, who appears to charge a premium rate, into a case for a "different viewpoint" when you already have two lawyers on the case who are experts in the area of law at issue and are themselves experienced litigators. Thus, I will not award plaintiff any fees for the work performed by Attorney Aiken. As for Attorneys Megna and Grzeskowiak, I find based on the evidence submitted that reasonable rates for them are $375 and $340, respectively. A paralegal rate of $125 appears reasonable in light of evidence that another lemon-law lawyer bills paralegal time at the rate of $165 per hour, see Gadtke Aff. ¶ 7, other courts have awarded paralegal time at the rate of $115 per hour, and defendant pays paralegal time at the rate of $90 per hour.[5]

---

[5]Defendant states that it has agreed to pay the following rates: $225 per hour for lead counsel, $210 per hour for associates, and $90 per hour for paralegals. Fertl Aff. ¶ 3. It contends that these rates are the market rates for Wisconsin lemon-law cases. However, defense lawyers in lemon-law cases expect to be paid even if they do not win

8

Turning to the reasonableness of the number of hours spent, I have considered all of the objections raised by the defendant on pages nine to nineteen of its brief. Except for the time spent on this case by Attorney Aiken, it appears to me that all the hours expended were reasonably invested. Accordingly, I will not further reduce the number of hours claimed.

For the foregoing reasons, I find that a reasonable fee for work performed by plaintiff's counsel through May 15, 2013 is the following:

| | | |
|---|---|---|
| Vincent P. Megna | 89.15 hours at $375 | $33,431.25 |
| Timothy J. Aiken | 0 hours at $490 | $0 |
| Susan M. Grzeskowiak | 320 hours at $340 | $108,800 |
| Erin E. Kandziora | 30.8 hours at $125 | $3,850 |
| TOTAL: | 439.95 hours | $146,081.25 |

A remaining matter is to award plaintiff's counsel a fee for work performed on this case since May 15, 2013. That work consisted of filing a reply brief in support of plaintiff's motion for judgment and attorneys' fees. In the reply brief itself, plaintiff requested a fee of $13,486.75 for this work. This prompted defendant to file a motion to strike the reply brief on the ground that it contained an argument that plaintiff did not make in its opening brief.[6] However, plaintiff did note in its opening brief that it would seek additional attorneys'

---

and in addition do not have to wait until the end of the case for payment. Plaintiff's lawyers in such cases must be awarded higher fees to account for their fee's contingent nature and the delay in payment. See Missouri v. Jenkins, 491 U.S. 274, 282–83 (1989); In re Cont'l Ill. Sec. Litig., 962 F.2d at 569, 570–71; Kirchoff, 786 F.2d at 326.

[6]Defendant also moved to strike on the ground that the brief exceeded this court's page limit for reply briefs. See Civil L.R. 7(f) (E.D. Wis. 2010). I will not strike the reply brief for this reason.

fees if any were incurred after the date of the opening brief.  <u>See</u> Mem. in Supp. of Fee Request at 30.  Moreover, there is no question that plaintiff's attorneys are entitled to a reasonable fee for work performed since the filing of plaintiff's opening brief.  Thus, defendant's motion to strike will be denied.  Still, defendant is entitled to challenge the reasonableness of the fee, and so I will grant it an opportunity to file a response to the request for an additional $13,486.75 in fees.  Once defendant's response is filed, I will enter an order identifying plaintiff's total fee award for work performed in the district court.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for judgment and attorneys' fees is **GRANTED IN PART** and **DENIED IN PART**, as follows: plaintiff is entitled to recover $369,196.06 as twice the amount of its pecuniary loss; $2,730.24 in prejudgment interest through October 31, 2011; 5% interest on the amount recovered from November 1, 2011 until the judgment is paid; $4,627.90 in statutory costs; $2,029.45 in litigation costs; and $146,081.25 in attorneys' fees through May 15, 2013.  Judgment will be entered after plaintiff's total fee award is determined.

**IT IS FURTHER ORDERED** that defendant's motion to strike plaintiff's reply brief is **DENIED**.

**FINALLY, IT IS ORDERED** that defendant shall respond to plaintiff's request for attorneys' fees for work performed after May 15, 2013, within 21 days of the date of this order.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

10

Case 2:11-cv-00747-LA   Filed 10/24/13   Page 10 of 10   Document 79